UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CITY OF HOLLYWOOD FIREFIGHTERS' PENSION    :
FUND and BOSTON RETIREMENT SYSTEM,    :
*Individually and on Behalf of All Others Similarly Situated,* :
   :
            Plaintiffs,    :
   :
      -v-    :       25-CV-0541 (JAV)
   :
FTAI AVIATION LTD., JOSEPH P. ADAMS, JR., and    :
EUN (ANGELA) NAM,    :
   :
           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION TO STRIKE CERTAIN EXHIBITS

Scott D. Musoff
Tansy Woan
Christopher R. Fredmonski
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants*
  *FTAI Aviation Ltd., Joseph P. Adams,*
  *Jr., and Eun (Angela) Nam*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

I.    PLAINTIFFS' MOTION TO STRIKE IS PROCEDURALLY IMPROPER .................... 3

II.   PLAINTIFFS' MOTION IS SUBSTANTIVELY MERITLESS ........................................ 4

      A.   The Court May Consider the Earnings
           Call Transcripts (Exhibits F, G, and P) ..................................................... 5

      B.   The Court May Consider the SEC Filings (Exhibits H, S, T, and U) ..................... 8

           1.   Exhibit H (2023 10-K) and Exhibit T (2015 10-K) ................................ 8

           2.   Exhibit U (7/23/24 8-K) .................................................................. 11

           3.   Exhibit S (2/20/25 8-K) .................................................................. 12

      C.   The Court May Take Judicial Notice
           of Historical, Public Stock Prices (Exhibit W) ........................................ 13

      D.   The Court May Consider FASB
           Accounting Standards (Exhibits K, M, and V) ......................................... 15

           1.   Exhibit K (FASB ASC Topic 330) ..................................................... 16

           2.   Exhibit M (FASB ASC Topic 606) ..................................................... 17

           3.   Exhibit V (FASB ASC Topic 230) ..................................................... 17

CONCLUSION ................................................................................................................. 18

LOCAL RULE 7.1(C) CERTIFICATION ......................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)........................................................................13, 15

*In re AmTrust Financial Services, Inc. Securities Litigation*,
    No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)...........................15

*In re AppHarvest Securities Litigation*,
    684 F. Supp. 3d 201 (S.D.N.Y. 2023)...................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................15

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).......................................................................5, 6, 8

*In re Axis Capital Holdings Ltd., Securities Litigation*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)..................................................................2

*In re Bank of America AIG Disclosure Securities Litigation*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013)..................................................................4

*In re Bausch & Lomb, Inc. Securities Litigation*,
    No. 01-CV-6190-CJS, 2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003)...........................8

*Bazzelle v. NovoCure Ltd.*,
    No. 1:23-cv-5146-GHW, 2025 WL 843668 (S.D.N.Y. Mar. 18, 2025).................3, 4, 8, 9

*BKNS Management ex rel. Abbson LLC v. Messner Reeves, LLP*,
    No. 24-CV-5581 (JAV), 2025 WL 2022590 (S.D.N.Y. July 18, 2025)............................5

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).......................................................................4, 11

*City of Austin Police Retirement System v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)................................................................11

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)........................................................................5, 8

*Docdeer Foundation v. BioNTech SE*,
    No. 24 Civ. 5310 (KPF), 2025 WL 2781381 (S.D.N.Y. Sept. 30, 2025).........................10

*Eden Alpha CI LP v. Polished.com Inc.*,
    763 F. Supp. 3d 270 (E.D.N.Y. 2025) .............................................................15, 16

*In re FuBoTV Inc. Securities Litigation*,
No. 21-cv-01412 (ALC), 2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) ........................13

*Graham v. UMG Recordings, Inc.*,
No. 25-CV-0399 (JAV), 2025 WL 2879607 (S.D.N.Y. Oct. 9, 2025) ...........................3, 4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ...................................................................................................14

*Harris v. AmTrust Financial Services, Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015),
*aff'd*, 649 F. App'x 7 (2d Cir. 2016) ...............................................................................18

*In re Hebron Technology Co. Securities Litigation*,
No. 20 Civ. 4420 (PAE), 2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021) .........................14

*Honig v. Hansen*,
No. 20 Civ. 5872 (AKH), No. 20 Civ. 8618 (AKH), 2021 WL 4651475 (S.D.N.Y.
Oct. 6, 2021) ................................................................................................................4

*I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991) ...............................................................................2, 9, 10, 11

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ...............................................................................7, 8, 10, 11

*Lateral Recovery, LLC v. Capital Merchant Services, LLC*,
632 F. Supp. 3d 402 (S.D.N.Y. 2022) .............................................................................12

*In re Manulife Financial Corp. Securities Litigation*,
276 F.R.D. 87 (S.D.N.Y. 2011) ....................................................................................15

*In re MINISO Group Holding Ltd. Securities Litigation*,
No. 22-cv-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)......................... passim

*Patel v. L-3 Communications Holdings Inc.*,
Nos. 14-CV-6038 (VEC) et seq., 2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) ..............18

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007).....................................................................................8, 9, 10

*Sable v. Southmark/Envicon Capital Corp.*,
819 F. Supp. 324 (S.D.N.Y. 1993) ................................................................................10

*Safran Elects. & Defense SAS v. iXblue SAS*,
789 F. App'x 266 (2d Cir. 2019) ...................................................................................11

*In re SAIC, Inc. Securities Litigation*,
     No. 12 Civ. 1353(DAB), 2013 WL 5462289 (S.D.N.Y. Sept. 30, 2013)..........................16

*SEC v. Fiore*,
     416 F. Supp. 3d 306 (S.D.N.Y. 2019)...............................................................................11

*Staehr v. Hartford Financial Services Group, Inc.*,
     547 F.3d 406 (2d Cir. 2008)................................................................................................8

*In re Stemline Therapeutics, Inc. Securities Litigation*,
     313 F. Supp. 3d 543 (S.D.N.Y. 2018)...............................................................................14

*Sun v. TAL Education Group*,
     No. 22-cv-01015 (ALC), 2023 WL 6394413 (S.D.N.Y. Sept. 29, 2023)...........................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007).................................................................................................2, 4, 15

**RULES**

Fed. R. Civ. P. 7(a) .....................................................................................................................4

Fed. R. Civ. P. 12(f)....................................................................................................................4

**INTRODUCTION**[1]

Relying entirely on the carbon-copied, unsubstantiated (and refuted) allegations of two short sellers, Plaintiffs claim that Defendants violated the federal securities laws by engaging in a purported "undisclosed revolving door accounting scheme" to "fraudulently inflate[]" the reported financial results for FTAI's Aerospace Products business segment. (AC ¶¶ 3, 8.) To obfuscate their obvious pleading failures, Plaintiffs have moved to strike various documents, many of which they incorporated by reference in the AC, because they claim that those documents contradict their fabricated and unsupportable narrative.

As a threshold matter, Plaintiffs' motion is procedurally improper (*infra* Part I), and contrary to established practice in this District. Plaintiffs gripe that they were placed in a "Catch 22" between waiving any challenge to the exhibits or filing their motion to strike. (MTS at 1 n.3.) Not so. Plaintiffs easily could have addressed the exhibits at issue in their opposition to Defendants' motion to dismiss.[2] The only thing constraining them from doing so was the word limit imposed by the Local Rules and this Court's Individual Rules and Practices in Civil Cases. Plaintiffs elected to flout that limit and unilaterally extend their word allocation by more than 1,700 words under the guise of a purportedly forced motion to strike. Plaintiffs' tactics should

---

[1] Capitalized terms not defined herein have the meanings given to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 69, the "Brief"), which is cited herein as "MTD at __." Exhibits that Defendants submitted with that motion (*see* ECF No. 70) are cited herein as "Ex. __ at __," Lead Plaintiffs' Memorandum of Law in Support of Lead Plaintiffs' Motion to Strike Certain Exhibits from Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 73) is cited herein as "MTS at __," and Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 71) is cited herein as "Opp. at __." Unless otherwise noted, all emphasis is added and internal citations are omitted.

[2] *Cf.* Order, *Graham v. UMG Recordings, Inc.*, No. 25-CV-0399 (JAV), ECF No. 55 (S.D.N.Y. May 15, 2025) (Vargas, J.) ("Plaintiff shall have the opportunity to be heard on the propriety of the court taking judicial notice of the materials in ECF No. 25 in his opposition to the motion to dismiss. The Court shall not accept separate briefing on this topic.").

not be countenanced, and are reason alone to deny their motion.

Equally improper is Plaintiffs' request for the Court to disregard the exhibits. Courts may not "close [their] eyes to the contents of" documents that are "integral" to a complaint and thereby "permit[] a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [documents] to the complaint or to incorporate [them] by reference." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991). Indeed, doing so in a securities-fraud case like this one would subvert Congress's objectives in enacting the PSLRA, including its "[e]xacting pleading requirements," as "a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *see also In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 584 (S.D.N.Y. 2006) (Rule 9(b) operates to "prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis").

Plaintiffs' motion attacks four categories of documents, each of which the Court may properly consider when ruling on Defendants' motion to dismiss:

*First*, Plaintiffs ask the Court to strike three earnings-call transcripts, which they have selectively quoted and thereby incorporated by reference into the AC. When ruling on a motion to dismiss, district courts may consider the full text of documents that plaintiffs selectively quote in their pleadings, and courts routinely consider full earnings-call transcripts in analogous circumstances. (*Infra* Part II.A.)

*Second*, Plaintiffs ask the Court to strike four of FTAI's SEC filings, all of which are integral to the AC, and three of which the AC expressly incorporates by reference. In so doing, Plaintiffs ignore controlling Second Circuit authority, which uniformly holds that such SEC filings are properly considered on motions to dismiss. (*Infra* Part II.B.)

2

*Third*, Plaintiffs ask the Court to strike a chart of FTAI's well-publicized, historical stock prices.  Again, Plaintiffs ignore black-letter law providing that district courts may properly take judicial notice of well-publicized stock prices.  (*Infra* Part II.C.)

*Fourth*, Plaintiffs ask the Court to strike certain provisions of the Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") that are at issue in this case and which Defendants submitted as exhibits for the Court's ease of reference.  The Court may properly consider these accounting standards when ruling on Defendants' motion to dismiss, since courts treat the FASB's standards as authority, not evidence.  (*Infra* Part II.D.)

Apparently aware that their arguments are legally meritless, Plaintiffs argue that, at the very least, the Court should not consider the subject exhibits for the truth of the matters asserted in them.  Plaintiffs' plea for the Court to give itself a limiting instruction is unnecessary.  As explained below, the exhibits are not offered for the truth of their contents or to "create" a "counter-narrative," as Plaintiffs claim.  (MTS at 1.)  Rather, they are offered to show only what Defendants said and what a reasonable investor would have understood at the time Defendants made the alleged misrepresentations, which must be analyzed "in their necessary and proper context."  *Graham v. UMG Recordings, Inc.*, No. 25-CV-0399 (JAV), 2025 WL 2879607, at *2 (S.D.N.Y. Oct. 9, 2025) (Vargas, J.) (citing *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020)).  Plaintiffs' motion and alternative request for relief should both be denied.

## ARGUMENT

### I.    PLAINTIFFS' MOTION TO STRIKE IS PROCEDURALLY IMPROPER

As a threshold matter, Plaintiffs' motion should be denied because it is "procedurally improper."  *Bazzelle v. NovoCure Ltd.*, No. 1:23-cv-5146-GHW, 2025 WL 843668, at *6 (S.D.N.Y. Mar. 18, 2025) (cited in MTS at 1 n.3).  Rule 12(f) permits a court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous

3

matter."  Fed. R. Civ. P. 12(f).  Rule 7 excludes motions from the definition of "pleadings," Fed. R. Civ. P. 7(a), and "courts in this district have held that Rule 12(f) does not authorize [a] court to strike documents other than pleadings."  *Honig v. Hansen*, Nos. 20 Civ. 5872 (AKH), 20 Civ. 8618 (AKH), 2021 WL 4651475, at *3 (S.D.N.Y. Oct. 6, 2021) (collecting cases).  This is reason alone to deny Plaintiffs' motion to strike.  *See, e.g.*, *NovoCure*, 2025 WL 843668, at *6 (denying motion to strike exhibits submitted in support of motion to dismiss); *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 238 (S.D.N.Y. 2023) (cited in MTS at 1 n.3) (same).

## II.    PLAINTIFFS' MOTION IS SUBSTANTIVELY MERITLESS

Plaintiffs alternatively request that the Court disregard the subject exhibits.  This request is meritless.  On a motion to dismiss, district courts "must consider" both "documents incorporated into the complaint by reference" and "matters of which a court may take judicial notice."  *Tellabs*, 551 U.S. at 322; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (similar).  A complaint incorporates a document by reference when it "make[s] a clear, definite and substantial reference to the document[]."  *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-cv-9864 (ER), 2024 WL 759246, at *7 (S.D.N.Y. Feb. 23, 2024).  "Judicial notice is appropriate when a matter is not subject to reasonable dispute because it is 'generally known . . .' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *UMG Recordings*, 2025 WL 2879607, at *1 (quoting Fed. R. Evid. 201(b)).  "Matters of which judicial notice can be taken include press coverage establishing what information existed in the public domain during periods relevant to the plaintiffs' claims."  *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

Courts may also consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing

4

the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (cited in

MTS at 1).  Thus, even if documents are not incorporated by reference in the complaint, courts

may still consider them if the plaintiffs relied on them in "framing the complaint," since those

documents are "integral to plaintiffs' claim" and the plaintiffs had "undisputed notice" of their

contents.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also*

*BKNS Mgmt. ex rel. Abbson LLC v. Messner Reeves, LLP*, No. 24-CV-5581 (JAV), 2025 WL

2022590, at *3 (S.D.N.Y. July 18, 2025) (Vargas, J.) ("[T]he Court may consider a document not

incorporated by reference if . . . the document [is] integral to the complaint.").  For example,

"partially quoted securities filings are integral to a complaint based on securities fraud," and a

court thus may consider "the full text of those documents" when ruling on a motion to dismiss.

*MINISO*, 2024 WL 759246, at *9 (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan*

*v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996)).

Here, through their motion, Plaintiffs urge the Court to disregard four categories of

exhibits that Defendants submitted in support of their motion to dismiss:  (i) three earnings-call

transcripts that Plaintiffs selectively quote in the AC; (ii) four SEC filings that are integral to the

AC, three of which the AC incorporates by reference; (iii) a chart of FTAI's well-publicized,

historical stock prices, and (iv) excerpts of certain FASB accounting standards at issue in the

case.  (*See* MTS at 3-6.)  Plaintiffs' arguments are entirely without merit.

**A.**      **The Court May Consider the Earnings Call Transcripts (Exhibits F, G, and P)**

First, the Court should reject Plaintiffs' request for it to disregard the transcripts of three

FTAI earnings calls from before the alleged Class Period that Plaintiffs selectively quote

throughout the AC and in their opposition to Defendants' motion to dismiss (Opp. at 6):

(i) 4Q22 Earnings Call (Exhibit F) (AC ¶ 61); (ii) 3Q22 Earnings Call (Exhibit G) (AC ¶¶ 11, 59,

193); and (iii) 2Q22 Earnings Call (Exhibit P) (AC ¶ 59).  Each of these documents is expressly

incorporated by reference in the AC, and thus is appropriately considered by the Court in resolving Defendants' motion to dismiss.  *See ATSI Commc'ns*, 493 F.3d at 98.  Even so, Plaintiffs assert that "[t]he only purpose of introducing these earnings call transcripts is to dispute the Complaint's well-pled allegations that Defendants engaged in undisclosed complex accounting improprieties."  (MTS at 3-4.)  Plaintiffs are wrong.  These documents provide context for Plaintiffs' assertion that, "[e]ven prior to the Class Period," Defendants misleadingly "lauded FTAI's purportedly strong and growing Aerospace Products' EBITDA."  (AC ¶ 11.)

For example, Plaintiffs allege that during the 2Q22 earnings call on July 28, 2022, "in response to an analyst question about customer interest in the maintenance business," Adams told investors that "we're seeing very broad-based growth in users" and that FTAI was "building backlog for 2023."  (*Id.* ¶ 59.)  Yet they claim that the Court should not consider the *complete answer* to the *very same analyst question*.  Specifically, Adams stated that the referenced "users" comprised "airlines," "maintenance shops," and "leasing companies."  (MTD at 8 (citing Ex. P, 2Q22 Earnings Call, at 13).)

Similarly, Plaintiffs allege that during the 3Q22 earnings call on October 28, 2022, Adams misleadingly "continued to tout the immediate success of the MRE business in Aerospace Products, stating, 'Aerospace [Products] had another solid quarter,'" and that "'[w]e see tremendous potential and feel good about generating $20 million to $30 million in quarterly EBITDA and think $100 million plus in 2023 EBITDA to be very doable.'"  (AC ¶ 59 (quoting 3Q22 Earnings Call, at 4).)  Yet they claim that the Court should not consider the *reason* Adams gave in his very next breath for "feel[ing] good" about that projection (*id.*)—namely, that FTAI was experiencing "a rapidly expanding backlog of aerospace products business."  (MTD at 8 (quoting Ex. G, 3Q22 Earnings Call, at 4-5).)  They also contend that the Court should not

6

consider Adams's explanation for *why* FTAI was seeing a rapidly expanding backlog:  FTAI

offers its customers module or full-engine exchanges, which allows them to avoid the significant

costs (millions of dollars) and downtime (often months) of a full engine overhaul.  (*See id.* at 5

(citing Ex. G, 3Q22 Earnings Call, at 11-12).)  Plaintiffs' arguments concerning the 4Q22

earnings call on February 24, 2023, flow from the same gamesmanship.  (*Compare* AC ¶ 61,

*with* MTD at 5 (citing Ex. F, 4Q22 Earnings Call, at 9).)

As should be apparent from the above, none of Exhibits F, G, or P is offered to factually

dispute Plaintiffs' deficient allegations of accounting fraud.  Instead, the full earnings-call

transcripts provide context for the statements that Plaintiffs selectively quote throughout the AC,

and they are properly considered to establish "what information existed in the public domain

during periods relevant to the plaintiffs' claims," *MINISO*, 2024 WL 759246, at *9, and thus to

highlight Plaintiffs' failure to plead particularized facts showing that any of the alleged

misrepresentations were false or misleading when made.  "Were courts to refrain from

considering such documents, complaints that quoted only selected and misleading portions of

such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed

to failure."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Sun v. TAL

Educ. Grp.*, No. 22-cv-01015 (ALC), 2023 WL 6394413, at *1 n.1 (S.D.N.Y. Sept. 29, 2023)

(considering, among other documents, "transcripts of earnings calls which [p]laintiffs quote[d]

from extensively in the [complaint] and thus incorporated into the [complaint] by reference").

Plaintiffs' tactics are not even supported by the cases on which they rely.  For example, in

*NovoCure*, the court granted the defendants' motion to dismiss and concluded that certain

"transcripts of NovoCure's earnings calls," among other exhibits, were "properly considered 'in

order to determine what statements they contained'" because the complaint "quote[ed] from

7

them extensively in alleging that [d]efendants made fraudulent statements." 2025 WL 843668, at *7 (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see also Staehr*, 547 F.3d at 425 (district court properly denied motion to strike and considered materials that "were offered to show that certain things were said in the press"). The Court should conclude the same here.[3]

**B.      The Court May Consider the SEC Filings (Exhibits H, S, T, and U)**

Plaintiffs next ask the Court to disregard four SEC filings, three of which they expressly incorporate by reference in the AC: (i) FTAI's 2023 Form 10-K (Exhibit H) (AC ¶¶ 137, 163); (ii) FTAI's 2015 Form 10-K (Exhibit T); (iii) FTAI's July 23, 2024 Form 8-K (Exhibit U) (AC ¶¶ 26, 114, 130); and FTAI's February 20, 2025 Form 8-K (Exhibit S) (AC ¶ 129). (*See* MTS at 4-5.) Plaintiffs' challenge is directly contrary to established Second Circuit law, including the cases they cite in support of their motion. *See ATSI Comm'ns*, 493 F.3d at 98; *Roth*, 489 F.3d at 509. "[W]hen a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer of these public documents." *Cortec*, 949 F.2d at 47; *see also Kramer*, 937 F.2d at 774 (similar). Plaintiffs efforts to avoid this settled law are makeweight.

**1.      Exhibit H (2023 10-K) and Exhibit T (2015 10-K)**

First, Plaintiffs assert that the Court should not consider Exhibit H because the AC "d[oes] not cite or rely on Exhibit H." (MTS at 4.) This assertion is false. Plaintiffs allege that Defendants falsely reported their quarterly financial results on Forms 10-Q filed with the SEC on August 9 and November 12, 2024, and further allege that these two purportedly misleading

---

[3] *In re Bausch & Lomb, Inc. Securities Litigation*, No. 01-CV-6190-CJS, 2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003) (cited in MTS at 3), is distinguishable. Unlike the transcripts at issue here, the transcript at issue in that case was not "integral" to the complaint, which "d[id] not refer to the conference call" that was transcribed. *Id.* at *17.

quarterly reports "*should be read in conjunction with the Consolidated Financial Statements and related notes included in the Company's Annual Report on Form 10-K for the year ended December 31, 2023.*"  (AC ¶¶ 137-45, 162-73.)  The 2023 10-K thus is expressly incorporated by reference in the AC and may be considered in its entirety as if it was part of the AC.  *See Novocure*, 2025 WL 843668, at *7; *MINISO*, 2024 WL 759246, at *9; *see also Roth*, 489 F.3d at 509 ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."); *I. Meyer Pincus*, 936 F.2d at 762 ("[W]hen 'plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.'" (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1327, at 489 & n.15)).

Moreover, Exhibits H and T provide necessary context for Plaintiffs' demonstrably false assertion that Defendants perpetuated "an undisclosed revolving door accounting scheme of asset transfers" between Aviation Leasing and Aerospace Products.  (AC ¶¶ 2, 8.)  For example, Plaintiffs allege that, "*unknown to investors*, FTAI assigned a useful life of 2-6 years to its aircraft engines."  (*Id.* ¶ 90.)  Exhibits H and T are offered to show that this allegation is fantasy: since FTAI went public in 2015, it has "disclosed in each of its annual reports that it depreciates engines carried as leasing equipment 'using the straight-line method' over an estimated useful life of '2 - 6 years, based on maintenance adjusted service life.'"  (MTD at 12-13 (quoting Ex. H, 2023 10-K, at 60, and also citing Ex. T, 2015 10-K, at 84).)  Exhibit H also rebuts other nondisclosure allegations concerning FTAI's accounting policies.  (*See id.* at 6, 8, 13.)  "When a complaint alleges . . . that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed."  *Roth*, 489 F.3d at 509.

Confirming that their motion to strike is an impermissible attempt to avoid dismissal by cherry-picking facts that they believe suit their unsupportable narrative while avoiding the context for those statements, Plaintiffs argue that the Court should not consider Exhibits H and T because "the content of the exhibits directly contradicts the Complaint's allegations." (MTS at 4.) Established law forecloses this argument. *See Kramer*, 937 F.2d at 773-74; *I. Meyer Pincus*, 936 F.3d at 762. Indeed, as shown in Defendants' motion to dismiss (MTD at 12) and unrebutted by Plaintiffs in their opposition brief (Opp. at 12-14), Plaintiffs cannot plead fraud based on a "naked assertion of concealment of material facts" that is "contradicted by published documents which expressly set forth the very facts allegedly concealed." *Sable v. Southmark/Envicon Cap. Corp.*, 819 F. Supp. 324, 333 (S.D.N.Y. 1993). "Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *Docdeer Found. v. BioNTech SE*, No. 24 Civ. 5310 (KPF), 2025 WL 2781381, at *14 (S.D.N.Y. Sept. 30, 2025).[4]

Finally, Plaintiffs argue that the Court should not consider Exhibits H and T "for the truth of the matter[s] asserted" in them. (MTS at 4.) Plaintiffs again miss the point. Exhibits H and T are not offered for the truth of their contents, but rather to show what was disclosed to the market at the time of the alleged misrepresentations. For example, in addition to FTAI's disclosure of its depreciation and other accounting policies, Exhibit H disclosed the risk factors that could affect FTAI's results of operations or financial condition. (*See* Ex. H, 2023 10-K, at 11-27.) These risk factors are relevant context for the forward-looking statements that Plaintiffs claim were false or misleading. (*See* MTD at 20-21 (addressing AC ¶¶ 133, 147, 156).) Even

---

[4] In their forthcoming reply brief in support of their motion to dismiss, Defendants will address Plaintiffs' erroneous invocation of and attack on the "truth on the market" defense—a straw man they set up to try to circumvent this dispositive case law. (*See* Opp. at 12-14.)

10

Plaintiffs agree that the Court can consider Exhibits H and T "for the fact that they 'contained certain information.'"  (MTS at 4 (quoting *Staehr*, 547 F.3d at 424-45).)[5]

### 2.    Exhibit U (7/23/24 8-K)

Bizarrely, Plaintiffs assert that the Court cannot consider FTAI's July 23, 2024 Form 8-K (Exhibit U)—the purportedly fraudulent press release reporting the Company's financial results for 2Q24 that Plaintiffs claim started the alleged Class Period.  (*Compare* MTS at 4, *with* AC ¶¶ 26, 114-15, 130; Opp. at 8.)  This document forms the basis of Plaintiffs' claims and thus is incorporated by reference in the AC.  *See Chambers*, 282 F.3d at 152-53.  Again, "partially quoted securities filings are integral to a complaint based on securities fraud."  *MINISO*, 2024 WL 759246, at *9.  It would be "highly impractical" if the Court could not consider "the very documents that are alleged to contain the various misrepresentations."  *Kramer*, 937 F.2d at 774.

Reviewing Exhibit U in full shows precisely why courts may not "close [their] eyes to the contents" of documents containing purported misrepresentations in securities-fraud actions.  *I. Meyer Pincus*, 936 F.2d at 762.  Plaintiffs allege that the June 30, 2024 earnings release "falsely touted all time high Aerospace Products' EBITDA of '91.2mm for Q2.'"  (AC ¶ 26 (quoting 7/23/24 8-K, Ex. 99.1, at 1).)  Plaintiffs explain that this report was false and misleading because

---

[5] This case is unlike those cited by Plaintiffs in their motion.  *See SEC v. Fiore*, 416 F. Supp. 3d 306, 329 (S.D.N.Y. 2019) (cited in MTS at 2) ("Here, Defendants ask the Court to consider the truth of the SEC filings' contents and hold as a matter of law that the statements made therein establish that Eat at Joe's was primarily involved in the business of 'creating American Diner themed restaurants, not investing.'"); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) (cited in MTS at 3) (concluding that it was "unavoidable that Kinross [was] relying on the Disputed Exhibits for the truth of the matters asserted in them" because the documents were "of no assistance to Kinross except if taken for the truth"); *see also Safran Elecs. & Def. SAS v. iXblue SAS*, 789 F. App'x 266, 271 (2d Cir. 2019) (in "unusual circumstances" where both a motion for a preliminary injunction and a motion to dismiss "were pending before the court," the district court erroneously considered a document that "was properly before the court" on the preliminary injunction motion "as a basis to dismiss the Petition" when it "decid[ed] both motions simultaneously").

FTAI's Aerospace Products EBITDA was artificially inflated by the purported accounting scheme.  (*See id.* ¶¶ 139-45.)  As shown in Defendants' motion to dismiss, however, Plaintiffs do not plead any particularized facts to support their conclusory assertion that FTAI's reported Aerospace Products EBITDA was false.  (*See* MTD at 14-15.)  Worse, they ask the Court to ignore the contemporaneously disclosed, objective support for FTAI's reported results, including that "FTAI's Module Factory™ now has over 50 active customers worldwide."  (Ex. U, 7/23/24 8-K, Ex. 99.1, at 1.)  In analyzing whether Plaintiffs have adequately pled that Defendants misleadingly reported FTAI's financial results in the July 23, 2024 earnings release, it is entirely proper for the Court to consider Plaintiffs' failure to plead any contemporaneous facts that contradict FTAI's quantification of the Module Factory's customer base.  (*See* MTD at 14-15.)

### 3.    Exhibit S (2/20/25 8-K)

Plaintiffs also argue that the Court should not consider FTAI's February 20, 2025 Form 8-K (Exhibit S), in which FTAI announced that the Audit Committee of its Board of Directors had determined that the short sellers' allegations underlying the AC were "without merit."  (Ex. S, 2/20/25 8-K, Item 8.01.)  According to Plaintiffs, Exhibit S "directly contradict[s] the Complaint's allegations."  (MTS at 4-5.)  But Exhibit S comes directly from the AC.  Indeed, quoting from the February 20, 2025 8-K, Plaintiffs allege as follows:

> Just one month after the publication of Muddy Waters' explosive report, FTAI's Audit Committee announced on February 20, 2025, that it had "completed its review" into the allegations of the report and "determined that *the allegations made against the Company are without merit*."

(AC ¶ 129 (quoting 2/20/25 8-K, Item 8.01).)  The Court "is entitled to consider the full text of" the February 20, 2025 8-K, since Plaintiffs "partially quote[]" from and thus incorporate it by reference in the AC.  *MINISO*, 2024 WL 759246, at *9; *cf. Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 435 (S.D.N.Y. 2022) (cited in MTS at 5) ("In

12

reviewing a motion to dismiss . . . , a court accepts all factual allegations as true[.]").

Insofar as Plaintiffs contend that their allegation was limited to the fact of the Audit Committee's "announcement," and not its ultimate conclusions, Plaintiffs still come up short. The AC conspicuously does not allege—even in conclusory fashion—that the Audit Committee did not conduct the referenced "review" or "determine[] that the allegations made [by the short sellers] against the Company [were] without merit."  (AC ¶ 129.)  Instead, they merely assert that the Audit Committee never released the "details" of its findings.  (*Id.*)

Apparently aware that Exhibit S is properly considered by the Court under settled law, Plaintiffs argue that Exhibit S is "irrelevant" because it "postdates the Class Period."  (MTS at 5.)  This argument is belied by Plaintiffs' opposition brief, which highlights the Audit Committee's February 20, 2025 announcement.  (*See* Opp. at 11.)  In any event, Exhibit S is relevant for loss causation.  (*See* MTD at 26 (citing Exhibit S, 2/20/25 8-K, Item 8.01).)  Indeed, Plaintiffs allege that one of the two purported "corrective disclosures" is FTAI's January 21, 2025 announcement that "its Audit Committee had 'commenced a review' of Muddy Waters' allegations," which Plaintiffs assert "provid[ed] substantial credence to Muddy Waters' claims."  (AC ¶ 178.)  Particularly since it is alleged in the AC, the Court is entitled to consider the announcement of the investigation's conclusion.  (*See id.* ¶¶ 129, 178.)

**C.**  **The Court May Take Judicial Notice of Historical, Public Stock Prices (Exhibit W)**

Next, Plaintiffs assert that it is "improper" for the Court to consider Exhibit W, a chart depicting FTAI's historical stock prices.  (MTS at 5.)  Plaintiffs cannot dispute that "a district court may take judicial notice of well-publicized stock prices" when ruling on a motion to dismiss.  *In re FuBoTV Inc. Sec. Litig.*, No. 21-cv-01412 (ALC), 2024 WL 1330001, at *4 (S.D.N.Y. Mar. 28, 2024) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000)); *accord Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 n.1 (2d Cir.

2012) (cited in MTS at 5); *In re Hebron Tech. Co. Sec. Litig.*, No. 20 Civ. 4420 (PAE), 2021 WL 4341500, at *1 n.2 (S.D.N.Y. Sept. 22, 2021) (cited in MTS at 2); *In re Stemline Therapeutics, Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 547 (S.D.N.Y. 2018).

Instead, Plaintiffs appear to believe that the Court's ability to take judicial notice of well-publicized stock prices is constrained by the start and end dates of the alleged Class Period. (*See* MTS at 5.) Plaintiffs are wrong. In securities-fraud cases, courts routinely take judicial notice of well-publicized, historical stock prices that post-date the alleged Class Period. For example, in *MINISO*, the court took judicial notice of "a chart showing MINISO stock prices from October 15, 2020–June 22, 2023," even though the alleged class period ended on July 26, 2022. 2024 WL 759246, at *1, *9. And in *Stemline Therapeutics*, the court took judicial notice of a "Stock Price Chart" showing that the company's stock price had recovered completely shortly after the end of the alleged class period. 313 F. Supp. 3d at 545, 547. This case is no different.

Plaintiffs also contend that the recovery of FTAI's stock price after the stock drops that prompted this lawsuit are "irrelevant for the Court's disposition of Defendants' MTD." (MTS at 5.) They are wrong again. While Plaintiffs contend that FTAI engaged in an accounting scheme during the Class Period, they do not allege that FTAI changed any of its accounting practices in response to the Muddy Waters Report or Snowcap Report. (*See* MTD at 15.) To the contrary, Plaintiffs admit that, after conducting an independent investigation, FTAI's Audit Committee concluded that the short-seller allegations were "without merit." (AC ¶ 129.) FTAI's stock-price recovery supports a plausible inference that the market agreed with the Audit Committee: the short-sellers' (and thus Plaintiffs') allegations of accounting improprieties are meritless. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("[T]he market price of shares traded on well-developed markets reflects all publicly available information[.]").

14

In determining whether the AC "states a plausible claim" for securities fraud, the Court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also, e.g.*, *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011) (concluding that the plaintiffs' "failure to address or explain" a "rebound" in the company's stock price after the alleged corrective disclosure "render[ed] their loss causation allegation implausible"). And in determining whether the AC pleads facts that "give rise to a 'strong' inference of scienter, the court *must* take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. Thus, Exhibit W is properly considered in its entirety.[6]

**D.    The Court May Consider FASB Accounting Standards (Exhibits K, M, and V)**

Finally, Plaintiffs argue that the Court should not consider copies of relevant topics of the FASB's ASC (Exhibits K, M, and V)—the single source of authoritative nongovernmental U.S. generally accepted accounting principles ("US GAAP").[7] (*See* MTS at 5-6.) FTAI discloses that its financial statements are prepared in accordance with US GAAP. (*See* Ex. H, 2023 10-K, at 59.) In support of their motion to dismiss the AC, which alleges an accounting scheme, Defendants submitted relevant topics of the FASB ASC for the Court's convenience, and not to establish factual truths. Courts consider the FASB's ASC, including on motions to dismiss, like any other regulatory authority, and not as evidence of facts, as Plaintiffs suggest. *See, e.g.*, *In re*

---

[6] *Acticon* is not to the contrary. In that case, the Second Circuit merely held a "the fact that a stock's share price recovered soon after the [alleged] fraud became known" does not "defeat[] an inference of economic loss in a securities fraud suit" as a matter of law. 692 F.3d at 36. In so holding, the court reiterated that it was "entitled to take judicial notice of well publicized stock prices," including those that post-dated the alleged class period. *Id.* at 37 & n.1.

[7] *See* Fin. Accounting Standards Bd., Accounting Standards Codification, available at https://asc.fasb.org/Home (last accessed Feb. 5, 2026); *see also Eden Alpha CI LP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 295 (E.D.N.Y. 2025) ("The FASB is 'the designated organization in the private sector for establishing standards of financial accounting and reporting.'" (quoting *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 478 n.3 (S.D.N.Y. 2005))).

*AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *12 (S.D.N.Y. Sept. 9, 2019) ("FASB's ASC is authoritative for purposes of the federal securities laws."); *Polished.com*, 763 F. Supp. 3d at 295 ("[T]he court will consider the FASB standards . . . just as it would any other source of regulatory authority."); *In re SAIC, Inc. Sec. Litig.*, No. 12 Civ. 1353(DAB), 2013 WL 5462289, at *1 n.2 (S.D.N.Y. Sept. 30, 2013) ("The SEC treats the FASB's standards as authoritative." (citing *Ganino*, 228 F.3d at 160 n.5)).[8]

Notably, regardless of the "truth" of the accounting standards (if they even have a "truth of the matter[] asserted therein" (MTS at 6)), Plaintiffs do not plead any facts (much less particularized ones) supporting a plausible inference that FTAI did not account for its business in conformance with the accounting standards that Plaintiffs ask the Court to disregard.  It is Plaintiffs' pleading failures, and not the exhibits, that compel dismissal here.

### 1.    Exhibit K (FASB ASC Topic 330)

As relevant here, ASC Topic 330 provides that "inventory" includes "goods awaiting sale," "goods in the course of production," and "raw materials and supplies," but "excludes long-term assets subject to depreciation accounting."  (Ex. K, ASC 330-10-20.)  It further provides that the "cost" for inventory "is understood to mean acquisition and production cost."  (*Id.*, ASC 330-10-30-1.)  Plaintiffs do not allege that FTAI depreciated aircraft engines held as inventory, as opposed to leasing equipment.  (*See* MTD at 6-7 (citing Ex. K, ASC 330-10-20).)  Nor do they plead particularized facts supporting a plausible inference that FTAI did not record the fair value of engines that it received from customers as part of exchanges as the book value of those engines.  (*See id.* at 7, 13 (citing Ex. K, ASC 330-10-30-1).)  To the contrary, Plaintiffs concede that FTAI did so; they just proclaim, without any particularized, supporting factual allegations,

---

[8] Plaintiffs do not challenge the FASB standards submitted as Exhibit I (FASB ASC Topic 360).

16

that FTAI (i) "overstated the fair value of engines received by Aerospace Products," and (ii) improperly exercised its discretion to assign book values to the engine's three modules. (AC ¶ 4; *see also id.* ¶¶ 5, 19-22 & n.3, 58, 99-104.) Plaintiffs' allegations fail to support their claims regardless of the "truth" of Exhibit K. (*See* MTD at 14-20.)

### 2.    Exhibit M (FASB ASC Topic 606)

FTAI discloses that "Aerospace Products revenue primarily consists of the transaction price related to the sale of repaired CFM56-7B, CFM56-5B and V2500 engines, engine modules, spare parts and used material inventory," and that such revenue is "accounted for within the scope of ASC 606." (Ex. H, 2023 10-K, at 48.) As relevant here, ASC Topic 660 provides that "[t]o determine the transaction price for contracts in which a customer promises consideration in a form other than cash," the entity shall "reasonably estimate the fair value of the noncash consideration." (Ex. M, ASC 606-10-32-21, 606-10-32-22.) Plaintiffs do not allege that FTAI failed to estimate the fair value of the noncash consideration received in connection with engine exchanges with its customers; they just allege in conclusory fashion that FTAI "inflated," "overstated," and "overvalued" the engines that it received from customers in those exchanges. (MTD at 20 (citing AC ¶¶ 4, 5, 19, 113, 139, 148, 164).) Again, Plaintiffs' allegations fail to support their claims regardless of the "truth" of Exhibit M. (*See* MTD at 14-20.)

### 3.    Exhibit V (FASB ASC Topic 230)

As relevant here, FASB ASC Topic 230 provides that "[e]ntities that choose not to provide information about major classes of operating cash receipts and payments by the direct method . . . shall determine and report the same amount for net cash flow from operating activities indirectly by adjusting net income of a business entity . . . to reconcile it to net cash flow from operating activities." (Ex. V, ASC 230-10-45-28.) FTAI performed this reconciliation in its 3Q24 10-Q, pursuant to which it deducted $244.353 million in "[g]ain on

17

sale of assets" from net income to derive its operating cash flows for the nine months ended September 30, 2024. (Ex. J. 3Q24 10-Q, at 9.) Plaintiffs speculate that this deduction means that FTAI must have "perform[ed] limited work" on the subject assets "in order to sell them to third-party customers of Aerospace Products" because otherwise it would have reported the cash flow from these asset sales as operating cash flow. (AC ¶ 94.)

ASC Topic 230 is cited to illustrate the drastic "leap of logic" between Plaintiffs' cherry-picked financial data point and their wild, conclusory accusations of accounting fraud. *Patel v. L-3 Commc'ns Holdings Inc.*, No. 14-CV-6038 (VEC), 2016 WL 1629325, at *9 (S.D.N.Y. Apr. 21, 2016). Indeed, as Defendants demonstrated in their motion to dismiss (and Plaintiffs failed to rebut in their opposition brief), "[t]he referenced adjustment shows, at most, that FTAI had $244.353 million in gains from asset sales that it did not attribute to operating activities." (MTD at 17 (citing Ex. V, ASC 230-10-45-28); *cf.* Opp. at 14-18.) Regardless of the "truth" of Exhibit V, Plaintiffs cannot plead accounting fraud through "speculation," "conclusory allegation[s]" or "*ipse dixit.*" *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 170-72 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to strike and reject Plaintiffs' alternative plea to disregard Exhibits F, G, H, K, M, P, S, T, U, V, and W.

18

Dated: New York, New York
      February 5, 2026

Respectfully submitted,

 /s/ Scott D. Musoff
Scott D. Musoff
Tansy Woan
Christopher R. Fredmonski
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
scott.musoff@skadden.com
tansy.woan@skadden.com
christopher.fredmonski@skadden.com

*Attorneys for Defendants*
   *FTAI Aviation Ltd., Joseph P. Adams,*
   *Jr., and Eun (Angela) Nam*

19

## LOCAL RULE 7.1(C) CERTIFICATION

I, Scott D. Musoff, hereby certify that this memorandum of law complies with the word-count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York and Section 5(A) of the Court's Individual Rules and Practices in Civil Cases, and contains 6,221 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and this certificate.

Dated:  New York, New York
       February 5, 2026

                                  /s/ Scott D. Musoff
                                  Scott D. Musoff